**Steven FISHER, Plaintiff,**

v.

**CITY OF CINCINNATI, et al.,
Defendants.**

**No. C–1–90–0551.**

United States District Court,
S.D. Ohio.

Dec. 13, 1990.

Steven Ayers, Columbus, Ohio, Walter Zuk, Brian Hurley, Gary Lewis, Cincinnati, Ohio, for plaintiff.

William Gustavson, Donald Hardin, William Fischer, Cincinnati, Ohio, for defendants.

## ORDER

CARL B. RUBIN, District Judge.

This matter comes before the Court on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by defendants City of Cincinnati, Lawrence Whalen, Donald Andres, Chuck Beebe, and Steve Wong. (Doc. No. 7). Plaintiff Steven Fisher has filed a response in opposition to this motion [1] (Doc. No. 16) and the defendants have replied. (Doc. No. 18).

---

1. Plaintiff seeks to supplement his responses to both this motion and to another pending motion to quash a subpoena duces tecum for Kevin Schroeder's medical records. (Doc. No. 20). Essentially, plaintiff requests that this Court consider Kevin Schroeder's recent conviction of negligent vehicular homicide (*State of Ohio v. Kevin Schroeder,* Case No. B–904321, Court of Common Pleas, Hamilton County, Ohio) and the jury's failure to convict him on the more serious charge of aggravated vehicular homicide, allegedly due to the suppression of a blood-alcohol test performed on Schroeder subsequent to the collision of his car with plaintiff's vehicle. The outcome of the criminal action against Schroeder and the substance of the jury deliberations in that case are irrelevant to the issues before this Court. Plaintiff's supplemental memorandum has not been considered in the disposition of either motion.

Defendants contend that plaintiff's amended complaint fails to state a claim upon which relief can be granted, entitling them to judgment in their favor as a matter of law. Plaintiff maintains that he has alleged facts sufficient to support his claims of constitutional deprivations brought pursuant to 42 U.S.C. § 1983 and to warrant the exercise of pendent jurisdiction over state claims as well.

## I. OPINION

This action arises from an alleged cover-up by the City of Cincinnati ("the City"), its Chief of Police, Lawrence Whalen, and several named and unnamed City police officers. Allegedly, these defendants acted to conceal the intoxication of an off-duty police officer, Kevin Schroeder, in connection with a May 7, 1989 collision ("the Collision") between two vehicles operated by Schroeder and plaintiff. A passenger in plaintiff's vehicle, Thomas Wood, Jr., died from injuries sustained as a result of the Collision. Plaintiff Steven Fisher, seriously injured in the Collision as well, was charged with the criminal offense of negligent vehicular homicide, allegedly as part of the cover-up designed to exonerate Kevin Schroeder. Fisher maintains that the police cover-up, perpetrated by the acts and omissions of individual officers and City officials, shielded Schroeder from criminal liability until June 25, 1990 when a second Hamilton County Grand Jury investigating the Collision returned an indictment against Schroeder for aggravated vehicular homicide and driving while intoxicated.[2] One day later, the charge of negligent vehicular homicide against Fisher was dismissed.

Fisher brought suit pursuant to § 1983 for damages and injunctive relief, alleging violations of his rights secured by the First, Fourth, Fifth and Fourteenth Amendments of the United States Constitution. Fisher also asserts in the amended complaint that defendants conspired to violate § 1983. Finally, Fisher alleges several pendent state claims: intentional and negligent infliction of emotional distress, malicious prosecution, abuse of process, and dereliction of duty.

Named defendants Whalen, Andres, Beebe, Wong and the City assert that the amended complaint fails to state a cognizable claim under § 1983 as to each of them. The issues ripe for disposition are: (A) Do the allegations of the amended complaint state claims of constitutional deprivations under the First, Fourth, Fifth or Fourteenth Amendments?; (B) Has plaintiff properly pleaded a § 1983 claim against the City?; (C) Are defendants Whalen, Andres, Beebe and Wong entitled to qualified immunity?; (D) Can plaintiff maintain his conspiracy claim against defendants?; (E) Can plaintiff maintain the pendent state claims asserted against the defendants in the amended complaint? An examination of these issues must be guided by the legal standard applicable to dismissals pursuant to Rule 12(b)(6).

### Motion to Dismiss Under Fed.R.Civ.P. 12(b)(6)

A Rule 12(b)(6) motion to dismiss requires the Court to examine whether a cognizable claim has been pleaded in the complaint. The basic federal pleading requirement is contained in Rule 8(a) of the Federal Rules of Civil Procedure which states that a pleading "shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). Rule 8(a)(2) operates to provide the defendant with "fair notice of what plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). A Court examines a complaint in light of the objectives of Rule 8 using the standard articulated in *Jones v. Sherrill*, 827 F.2d 1102 (6th Cir.1987):

> In reviewing a dismissal under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983), *cert. denied*, 469

---

**2.** The Grand Jury also returned indictments against defendants James Lamping and Mark

Taylor for obstruction of justice and dereliction of duty.

U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). The motion to dismiss must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle her to relief. *Id.* at 158; *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

*Id.* at 1103.

■ The admonishment to liberally construe plaintiff's claim when evaluating a Rule 12(b)(6) motion does not relieve a plaintiff of his obligation to satisfy federal notice pleading requirements and allege more than bare assertions of legal conclusions. Wright & Miller, Federal Practice & Procedure: § 1357 at 596 (1969). "In practice, a complaint ... must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985) (*quoting In Re: Plywood Antitrust Litigation*, 655 F.2d 627, 641 (5th Cir.1981), *cert. dismissed*, 462 U.S. 1125, 103 S.Ct. 3100, 77 L.Ed.2d 1358 (1983)); *see also Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir.1984); Wright & Miller, Federal Practice & Procedure: § 1216 at 121–23 (1969). The United States Court of Appeals for the Sixth Circuit clarified the threshold set for a Rule 12(b)(6) dismissal:

> [W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems

fair to assume that those facts do not exist.

*Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir.1988); *O'Brien v. DiGrazia*, 544 F.2d 543, 546 n. 3 (1st Cir.1976), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977). In its scrutiny of the complaint, a Court construes all well-pleaded facts liberally in favor of the party opposing the motion. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

### A. The Asserted Constitutional Deprivations

Fisher alleges in Paragraph 59 of his amended complaint that defendants:

> [A]cted maliciously, deliberately and with reckless disregard of Fisher's constitutional rights, including his rights to unencumbered freedom to petition the courts for redress of grievances, freedom from being criminally charged without probable cause, freedom from malicious prosecution, due process of law and equal protection. All of these rights are secured to Fisher by the provisions of the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution and by Title 42 U.S.C. § 1983 and § 1988.

■ In order to state a valid cause of action under § 1983, Fisher must allege a deprivation of his constitutional rights.[3] Defendants contend that the "constitutional linchpin" for plaintiff's allegations of an alleged police cover-up is the constitutional right of access to the courts.[4] Citing *Joyce v. Mavromatis*, 783 F.2d 56 (6th Cir.1986), defendants submit that the alleged cover-up does not give rise to such a constitutional violation.

In *Joyce*, the Court of Appeals for the Sixth Circuit affirmed the dismissal of a § 1983 action in which plaintiff alleged that a municipality and its police chiefs altered

---

3. § 1983 provides in part that: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ..."

4. The right of access to the courts, a fundamental right guaranteed by the United States Constitution, has several constitutional bases including the First and Fourteenth Amendments as well as the Due Process Clause. See *Graham v. National Collegiate Athletic Ass'n*, 804 F.2d 953, 959 (6th Cir.1986).

evidence concerning a traffic accident involving the plaintiff and the son of one of the police chiefs in order to defeat plaintiff's state court damage suit against the son. The *Joyce* Court held that plaintiff did not state a valid First Amendment access-to-the-courts claim:

> The plaintiff has the right under Ohio law to file her damage suit and to offer proof about the accident and the alleged destruction of relevant evidence. If she is able to prove that the Police Chief's son and his confederates undertook to destroy evidence of the son's negligence as a driver, there is no reason to believe that an Ohio court and jury would be unavailable and would not do justice between the parties.

*Id.* at 57.

Fisher urges the Court to hold that the *Joyce* rationale is inapplicable on several grounds. Primarily, Fisher contends that a procedural due process analysis is not appropriate where violation of a substantive constitutional right is alleged.[5] A post-*Joyce* opinion of the Court of Appeals for the Sixth Circuit cited several cases from other circuits in which interference with the right of access to the courts was treated as a deprivation of a substantive constitutional right actionable under § 1983. *See Graham v. National Collegiate Athletic Ass'n*, 804 F.2d at 959 (6th Cir.1986) ("... interference with or deprivation of the right of access to the courts is actionable under § 1983.") *citing inter alia Harrison v. Springdale Water & Sewer Commission*, 780 F.2d 1422, 1427 (8th Cir.1986); *Ryland v. Shapiro*, 708 F.2d 967, 972 (5th Cir.1983).

The *Harrison* Court ruled that landowners' § 1983 action, in which they al-

leged that a municipality and its officials conspired to force them to settle a state court lawsuit against a city agency and to sell their property by filing a frivolous condemnation claim, survived a Rule 12(b)(6) motion to dismiss. Stating that an individual is entitled to "free and unhampered access to the courts," the Court of Appeals for the Eighth Circuit noted that:

> Since the Harrisons have alleged a violation of a substantive constitutional right independent of the Fourteenth Amendment due process clause *simpliciter*, the existence of an adequate state remedy under the *Parratt* analysis is irrelevant.[6]

*Id.* at 1428 n. 10.

Similarly, the Court of Appeals for the Fifth Circuit reversed the dismissal of a § 1983 action arising from the alleged cover-up by two district attorneys of the murder of plaintiffs' daughter by a local prosecutor. *Ryland*, 708 F.2d at 974. The *Ryland* Court, observing that plaintiffs' complaint alleged both substantive and procedural deprivations, held that defendants' cover-up may have prejudiced or interfered with plaintiffs' substantive right to recovery on a state court wrongful death action. Stating that a mere formal right of access to the courts does not pass constitutional muster since access must be "adequate, effective, and meaningful," *Ryland*, 708 F.2d at 972, the Fifth Circuit Court of Appeals held that:

> The defendants' actions could have prejudiced the Rylands' chances of recovery in state court because the resulting delay would cause stale evidence and the fading of material facts in the mind of potential witnesses. Moreover, it could well prove more expensive to litigate such action. Finally, any interference

---

5. The applicability of Fisher's other arguments hinge on the disposition of this issue. The inability of Fisher to introduce the results of Schroeder's blood-alcohol tests in a "dram shop" action against Second Street Saloon (where Schroeder was allegedly served alcohol prior to the Collision), the City's alleged immunity from suit in a state court action, and the settlement reached in Fisher's personal injury claim against Schroeder are irrelevant if Fisher suffered a deprivation of his substantive constitutional rights due to the alleged police cover-up.

6. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (overruled in part not relevant to this inquiry) and *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) hold that a deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim, unless the State fails to provide an adequate post-deprivation remedy. See *Zinermon v. Burch*, —— U.S. ——, 110 S.Ct. 975, 978, 108 L.Ed.2d 100 (1990).

with a substantive constitutional right, such as the right of access to the courts, may by itself amount to a constitutional deprivation (unless reasonably justified by a countervailing state interest.)

*Id.* at 975.

■ This Court finds the *Joyce* rationale inapplicable in light of *Graham, Harrison, Ryland,* and also *Zinermon,* a recent Supreme Court decision analyzing procedural due process claims brought under § 1983. In *Zinermon,* the Supreme Court explained that a procedural due process deprivation is distinct from a violation of specific constitutional guarantees secured by the Bill of Rights or a substantive violation of the Due Process Clause triggered by "certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.' " *Id.* at 983. Assuming Fisher's allegations of a thwarted police investigation of the Collision and a cover-up of Schroeder's intoxication to be true, the interference with and potential prejudice to Fisher's right of access to redress in state court rises to the level of a constitutional deprivation of Fisher's rights secured by the First and Fourteenth Amendments.

■ Fisher's equal protection claim brought under the Fourteenth Amendment rests on plaintiff's allegations that the police intentionally discriminated against him in order to protect Schroeder. Fisher alleges that defendants' cover-up during the police investigation of the Collision led to the criminal charge against him of negligent vehicular homicide. Because plaintiff alleges that the police failed to fulfill their duty to enforce the laws equally and fairly against him, he has stated a valid cause of action under the Equal Protection Clause of the Fourteenth Amendment. *Neighborhood Action Coalition v. Canton, Ohio,* 882 F.2d 1012, 1017 (6th Cir.1989); *Smith v. Ross,* 482 F.2d 33, 36 (6th Cir.1973); *see also Ryland,* 708 F.2d at 974 *and Bartalone v. County of Berrien,* 643 F.Supp. 574,

576 (W.D.Mich.1986). Neither defendants nor plaintiff address the question of whether the allegations in the amended complaint are sufficient to state a claim of deprivation of rights guaranteed by the Fourth Amendment. Without ruling upon the merits of this issue, this claim survives this motion.

■ Finally, defendants seek dismissal of plaintiff's claim asserting a substantive violation of the Due Process Clause of the Fourteenth Amendment.[7] Fisher maintains that defendants' actions and omissions led to the filing of criminal charges against him without probable cause to do so. He alleges that this conduct is so egregious and outrageous that it "shocks the conscience." This test has doubtful utility when the conduct complained of is not based on excessive force or physical abuse. *Braley v. City of Pontiac,* 906 F.2d 220, 226 (6th Cir.1990). Moreover, the claims of malicious prosecution and false arrest which underlie plaintiff's allegations are not actionable under § 1983. *See Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Braley,* 906 F.2d at 227. Therefore, the allegations of the amended complaint do not, as a matter of law, "shock the conscience" as that standard has been employed in this Circuit. Plaintiff's substantive due process claim is without merit.

Defendants devote much argument to the failure of plaintiff to properly allege a procedural due process violation. Defendants assert that adequate post-deprivation remedies exist and thereby contest the viability of such a claim. In fact, plaintiff concedes that the allegations of the amended complaint do not state procedural due process deprivations but rather constitute violations of substantive constitutional rights. *See* Plaintiff's Motion for Leave to File Amended Complaint. (Doc. No. 14). Since plaintiff does adequately allege deprivations of specific constitutional guarantees, leave to amend the amended com-

---

7. The Due Process Clause of the Fifth Amendment attaches only when the federal government seeks to deny an individual a liberty or property interest, not an allegation in this case.

*Knoetze v. U.S., Dept. of State,* 634 F.2d 207, 211 (5th Cir.), cert. denied, 454 U.S. 823, 102 S.Ct. 109, 70 L.Ed.2d 95 (1981).

plaint to assert a lack of post-deprivation remedies is not warranted and is hereby denied. Defendants' argument is rendered moot.

In sum, Fisher has alleged a valid cause of action under § 1983 for the violation of his right of access to the courts secured by the First and Fourteenth Amendments. Claims of deprivation of rights secured by the Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment survive this motion as well. Plaintiff's allegations of violations of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment are without merit and are hereby dismissed.

### B. The Liability of the City of Cincinnati

To establish liability of the City pursuant to § 1983, Fisher must allege that the unconstitutional conduct "implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers" or was visited "pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Fisher may not affix liability on the City based on a theory of respondeat superior, *Id.* at 691, 98 S.Ct. at 2036, but must allege those "officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989); *see also Pembaur v. Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Whether an official has 'final policymaking authority' is determined by state law. *St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 923, 99 L.Ed.2d 107 (1988). The identification of those officials of the local government who possess final policymaking authority is a legal question subject to the trial judge's examination; the jury,

however, must evaluate whether the decisions of these policymakers "caused the deprivation of rights at issue by policies which affirmatively command that it occur, [citation omitted] or by acquiescence in a longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." *Jett*, 109 S.Ct. at 2723.

#### 1. The Alleged Policymakers

Fisher asserts in his amended complaint that defendants Whalen, Andres, Lamping and Scott Johnson were City policymakers for the purposes of the police investigation of the Collision. Defendant Whalen is Chief of Police of the Police Division of the City. Plaintiff charges that Whalen failed to intervene with the City Traffic Unit's investigation of the Collision despite expressions of concern by the family of the deceased Wood that the investigation may be tainted by a bias in favor of Schroeder, an officer of the Traffic Unit. Plaintiff further alleges that Whalen continued the cover-up of Schroeder's intoxication during questioning by City Council on January 22, 1990 and that his acts and omissions constituted an adoption and ratification of the wrongdoing of those police officers investigating the Collision. Defendant Andres, Commander of the Traffic Unit, allegedly failed to properly supervise the Traffic Unit's investigation of the Collision and affirmatively concealed information relating to Schroeder's intoxication.

Defendant Lamping, Schroeder's immediate supervisor in the Traffic Unit, was allegedly "charged with the authority to conduct the on-scene and immediate follow-up investigation of the Collision." Amended Complaint ¶ 68. Plaintiff contends that Lamping: acted to cover-up Schroeder's intoxication by directing Officer Taylor to rinse Schroeder's mouth out before taking Schroeder to the hospital after the Collision occurred; prepared false and incomplete reports of the Collision and gave false and misleading testimony to the Ohio Grand Jury regarding Schroeder's intoxication; and concealed information about Schroeder's intoxication from the investigating officers of the Traffic Unit.

Finally, Scott Johnson, City Manager, was allegedly charged by City Counsel with the responsibility of investigating allegations made by a citizen that a cover-up of Schroeder's intoxication tainted the police investigation of the Collision. Plaintiff alleges that on December 13, 1989 Johnson adopted and ratified the conclusions of two police investigations conducted by the Traffic Unit and the Internal Investigation Section, both of which exonerated Schroeder while failing to expose the alleged cover-up.

### 2. The Policy at Issue

Plaintiff alleges that the policy or custom of having the Traffic Unit investigate a fatal collision despite the involvement of a member of the Traffic Unit in the collision caused the intentional concealment of Schroeder's intoxication. Fisher asserts that this wrongful conduct was not an isolated incident but rather part of a pattern and practice of police misconduct arising from police investigations of fellow police officers. Further, plaintiff maintains that the lack of supervision and training of those police officers investigating the Collision caused the alleged cover-up.

### 3. Attribution of the Policy to the Policymakers

What standard a trial court should apply when examining whether an official has policymaking authority is a question which continues to plague the United States Supreme Court. See Jett, 109 S.Ct. at 2723 ("Last Term in [Praprotnik], we attempted a clarification of tools a federal court should employ in determining where policymaking authority lies for purposes of § 1983."). Some parameters of the scope of liability can be drawn, however. Discretionary decisions made by an official who is constrained by policies not of that official's making do not bind the municipality. Praprotnik, 485 U.S. at 127, 108 S.Ct. at 925–26. But a failure to train city employees which amounts to a deliberate indifference to the constitutional rights of persons with whom police come into contact can serve as a basis for municipal liability under § 1983. Canton v. Harris, 489 U.S. 378, 392, 109 S.Ct. 1197, 1207, 103 L.Ed.2d 412 (1989).

Defendants contest plaintiff's assertion that Whalen, Andres and Lamping acted as policymakers, though they concede that the City Manager, Scott Johnson, has policymaking authority as does City Council. Defendants point to the City's Charter and to the Administrative Code adopted by City Council (Doc. No. 8), of which the Court takes judicial notice, to support their position that City Council and, in certain instances, the City Manager have policymaking authority. Article IV, § 3 of the Charter delineates the duties of the City Manager, including the duty to act as chief conservator of the peace and to supervise the administration of the City. Article I, § 7 of the Administrative Code vests the City Manager with the final approval of any rules or regulations prescribed by the Department of Safety and, derivatively, by the police.

The only local law cited by either party, the City Charter and the Administrative Code, seats final policymaking authority in the City Manager, Scott Johnson.[8] Whalen, Andres and Lamping, though charged with supervising and executing the City's policies or customs, do not possess the authority to make "final" policy as defined in Praprotnik. The Court is mindful of the posture of this case. At this early juncture, it does not appear beyond doubt that plaintiff can prove no set of facts establishing that (1) Johnson adopted and ratified the cover-up of Schroeder's intoxication and that (2) the wrongful conduct was part of a pattern of practice of police misconduct arising from police investigations of fellow officers. Similarly, plaintiff may establish that the City's alleged failure to adequately supervise and train its police officers in the conduct of such investigations rose to the level of deliberate indifference of the rights of those

---

8. Though defendants concede that Johnson is a policymaker, they dispute that he had knowledge that the policy was injurious to the rights of those with whom the police came in contact.

with whom the police came into contact.[9] Plaintiff is at least entitled to demonstrate the validity of his allegations through discovery.

 Finally, defendants contend that plaintiff fails to meet the constitutional causation requirement set forth in *Oklahoma City v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791, *reh'g denied,* 473 U.S. 925, 106 S.Ct. 16, 87 L.Ed.2d 695 (1985): "At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged." While plaintiff must prove causation in order to recover, for the purposes of a Rule 12(b)(6) motion to dismiss, Fisher may rely on his allegations that his constitutional deprivations were the direct and proximate result of the City's policies and practices.

Plaintiff has adequately alleged a § 1983 claim against the City by virtue of the acts and omissions of Scott Johnson, who possessed final policymaking authority. Accordingly, any claims brought against defendants Whalen, Andres, Lamping, Taylor, Beebe and Wong in their official capacities as employees of the City are stricken. *See Monell,* 436 U.S. at 694, 98 S.Ct. at 2037. Plaintiff has stated claims against these defendants acting in their individual capacities.

### C. *Qualified Immunity*

 Defendants Whalen, Andres, Beebe and Wong seek dismissal of this action against them based on the affirmative defense of qualified immunity. Defendants argue that, in order to overcome the hurdle of qualified immunity, plaintiff must demonstrate that defendants' conduct violated clearly established law. Citing *Joyce,* defendants submit that the constitutional deprivation complained of was not recognized in this Circuit.

In *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the United States Supreme Court reaffirmed those principles governing an inquiry into the validity of a defense of qualified immunity:

> [W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action, [citation omitted] assessed in light of the legal rules that were "clearly established" at the time it was taken.

*Id.* at 639, 107 S.Ct. at 3038. The Supreme Court goes on to explain that the operation of the "objective legal reasonableness" test requires the Court to examine whether a reasonable officer could have believed that the wrongful conduct was lawful, in light of clearly established law. *Id.* at 641, 107 S.Ct. at 3039. The right of access to the courts has long been recognized to be a fundamental right rooted in the United States Constitution. *See California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). Moreover, a post-*Joyce* decision handed down late in 1986 (*Graham,* supra) recognized that deprivation of this substantive right is actionable under § 1983 and cited decisions in several circuits, including the Fifth and Eighth Circuits, which address this inquiry.

Plaintiff's allegations, taken as true, charge defendants with engaging in a cover-up of criminal conduct on the part of a fellow officer. Applying the "objective legal reasonableness" test to the allegations of the amended complaint, a reasonable police officer would not have believed that this conduct was lawful in light of the law established by May, 1989. *See Haynes v. Marshall,* 887 F.2d 700, 703 (6th Cir.1989). Defendants Whalen, Andres, Beebe and Wong are not entitled in this action to qualified immunity.

### D. *Allegations of Conspiracy*

 Fisher alleges that defendants conspired with one another to cover-up Schroeder's intoxication and thereby deprived him of his constitutional rights. De-

---

9. Contrary to defendants' assertions, a subsequent investigation of the Collision by the City's Office of Municipal Investigations which confirmed plaintiff's allegations of a cover-up of Schroeder's intoxication does not shield the City from liability for any wrongdoing which may have previously occurred.

fendants attack plaintiff's conspiracy claim on two grounds: (1) allegations of conspiracy are nonessential and are merely dispositive of state action; and (2) a municipality cannot conspire with its employees and employees cannot conspire with one another. Defendants mischaracterize the law on this issue. First, an action for conspiracy may be maintained under § 1983. *Ryland,* 708 F.2d at 974. Allegations of conspiracy can furnish the conceptual spring for imputing liability from one person to another. *Villanueva v. McInnis,* 723 F.2d 414, 418 (5th Cir.1984). Second, a municipality cannot conspire with its employees unless a municipality through its policymaker combines or agrees with a municipal police officer to act to deprive an individual of his constitutional rights. *Edmonds v. Dillin,* 485 F.Supp. 722, 729 (N.D.Ohio 1980); *Doherty v. American Motors Corp.,* 728 F.2d 334, 339 (6th Cir.1984). Two persons sued in their individual capacities may be found liable for conspiracy under § 1983, however. *Ryland,* 708 F.2d at 974.

■ Plaintiff's conspiracy claims against the City cannot survive since there is no allegation in the amended complaint that Johnson, the City's policymaker, conspired with any police officer to act to deprive Fisher of his constitutional rights. Plaintiff has alleged that the other defendants, sued in their individual capacities, conspired with one another. This is sufficient to state a cognizable claim of conspiracy to violate § 1983. Accordingly, the conspiracy claims against the City are dismissed; the conspiracy claims against the other defendants are maintained.

### E. *Pendent State Claims*

Pendent jurisdiction over plaintiff's state claims is proper because plaintiff has stated a cognizable claim under § 1983.[10] The City does request that all state claims against it be stricken pursuant to Ohio law. The other defendants, all City employees, seek dismissal of plaintiff's claim for negligent infliction of emotional distress on the grounds that such employees are immune

from liability for negligence under Ohio Revised Code § 2744.03(A)(6).

The City directs the Court to O.R.C. § 2744.02(A)(1) which states that a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental function. A governmental function is defined to include the police. O.R.C. § 2744.01(C)(2)(a). The City contends that none of the exceptions to O.R.C. § 2744.02(A)(1), as set forth in O.R.C. § 2744.02(B), apply in this case.

Plaintiff drops the ball as it were and does not refute defendants' contentions on this issue. Accordingly, all of plaintiff's state law claims against the City are dismissed without prejudice to bring them in state court. Further, plaintiff's claim of negligent infliction of emotional distress against defendants Whalen, Andres, Lamping, Taylor, Beebe and Wong, and unnamed police officers is also dismissed without prejudice to bring this claim in state court.

### II. CONCLUSION

Defendants' motion to dismiss the amended complaint for failure to state a claim upon which relief can be granted is DENIED IN PART and GRANTED IN PART:

1. Plaintiff's claims alleging violation of his rights secured by the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment are without merit and are hereby DISMISSED;

2. Plaintiff has stated valid claims for deprivation of his right of access to the court and his right to equal protection guaranteed by the First and Fourteenth Amendments;

3. Without ruling on the merits of plaintiff's claim of deprivation of his Fourth Amendment rights, this cause of action is maintained;

4. Plaintiff has stated a cognizable claim under § 1983 against the City. Offi-

---

**10.** Fisher's state law claims are: intentional infliction of emotional distress, negligent inflic- tion of emotional distress, malicious prosecution, abuse of process, and dereliction of duty.

cial capacity claims against all other defendants are dismissed. Individual capacity claims brought against defendants Whalen, Andres, Lamping, Taylor, Beebe, Wong and unnamed members of the City police force are maintained;

5. Defendants Whalen, Andres, Beebe and Wong are not entitled to qualified immunity;

6. Plaintiff has stated a valid conspiracy claim under § 1983 against all defendants except the City. The conspiracy claim against the City is therefore dismissed;

7. All pendent state law claims against the City are dismissed without prejudice to bring these claims in state court. The claim of negligent infliction of emotional distress is dismissed as to all defendants without prejudice to sue upon this cause of action in state court; and

8. Plaintiff's motion for leave to file an amended complaint (Doc. No. 14) is rendered moot by this Order and is therefore also DENIED.

IT IS SO ORDERED.