**BRANCH INTERNATIONAL SERVICES, INC.,** an Indiana Corporation, Charles Garavaglia, Mary Ann Garavaglia, individuals, B.I.S., C & G Consultants, Inc., a Michigan Corporation, Plaintiffs,

v.

James A. **BUDDE** and Joseph Ellery, individuals, Defendants.

Civ. A. No. 94–74941.

United States District Court, E.D. Michigan, Southern Division.

June 15, 1995.

Saul Green, U.S. Atty. by William Woodard, Asst. U.S. Atty., Detroit, MI, for plaintiffs.

Joseph Falcone, Southfield, MI, for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

GADOLA, District Judge.

Plaintiffs Branch International Services, Inc., Charles Garavaglia, Mary Ann Garavaglia, B.I.S., and C & G Consultants, Inc. brought this action against James A. Budde and Joseph Ellery, Special Agents of the Internal Revenue Service, Criminal Investigation Division, alleging that defendants have unconstitutionally interfered with plaintiffs' state law case against third parties. Before the court is defendants' motion to dismiss. For the reasons discussed below, the court will grant defendants' motion.

### I. Facts

According to the defendants, the plaintiffs are currently under criminal investigation by the Internal Revenue Service for various federal tax offenses.[1] The case agents in charge of that investigation are IRS Special Agents Budde and Ellery. Potential key witnesses against the plaintiffs are Leroy Yarnell, a former bookkeeper and tax preparer for plaintiffs, and two of his adult sons, who had been retained by plaintiffs to perform various accounting functions.

In July, 1992, plaintiffs first learned of the investigation against them when the IRS executed several search warrants at plaintiffs' residences and business locations. Shortly thereafter, plaintiffs filed a *Bivens* action against Budde and Ellery, *Charles L. Garavaglia, et. al. v. James A. Budde, et. al.,* 92–CV–76774–DT, alleging that they violated plaintiffs' federal constitutional rights by unlawfully obtaining and executing the search warrants. Judge Rosen dismissed plaintiffs' suit, granting summary judgment in favor of Budde and Ellery. Plaintiffs also filed an action in Oakland County Circuit Court, *Branch International Services, et. al. v. Leroy Yarnell, et. al.,* 92–446372–NM. In that action, plaintiffs allege that the Yarnells and their businesses embezzled money from plaintiffs, and wrongfully disclosed information and documents to the IRS for use in its criminal investigation of plaintiffs. That action is currently at the discovery stage. On

---

1. Plaintiffs' response to defendants' motion to dismiss does not deny any of these facts.

January 24, 1995, the judge in the Oakland County case entered an order staying discovery pending disposition of a third suit against the United States, in which plaintiffs are attempting to obtain certain materials from the United States. During oral argument, plaintiffs admitted that they have received the material that they needed to pursue their state court action.

In November, 1994, plaintiffs served Budde with a deposition subpoena in their state court action. Plaintiffs sought Budde's testimony and all his notes and memoranda of meetings, conversations and telephone calls between the Yarnells and Budde. According to defendants, the government declined to authorize Budde to provide the requested testimony and documents in light of the ongoing criminal investigation against plaintiffs.

In December 1994, plaintiffs served the IRS District Director in Detroit with a deposition subpoena in the state court action. The subpoena sought production and copies of all statements, depositions, and affidavits which the Yarnells had provided to the IRS about the plaintiffs within the last five years. The subpoena also sought records of some businesses owned or operated by the Yarnells which plaintiffs alleged were in the IRS' possession. The subpoena was accompanied by consent forms signed by the Yarnells authorizing the IRS to provide the requested documents to plaintiffs. According to defendants, the IRS declined to produce most of the requested documents in order to protect the integrity and confidentiality of its ongoing criminal investigation of plaintiffs.

On December 14, 1994, plaintiffs filed an action under the Administrative Procedures Act, 5 U.S.C. 551 et. seq., alleging that the IRS clearly abused its discretion by declining to authorize Budde and the IRS District Director to produce the testimony and documents sought by the subpoenas for information and documents which plaintiffs had served on them relative to the state action. This APA action, *Branch International Services, Inc. et. al. v. United States of America, et al.,* 94–CV–75003–DT, is currently pending before Judge Rosen.

On December 9, 1994, plaintiffs commenced the present action. Defendants filed a motion to dismiss. On March 14, 1995, Magistrate Judge Pepe entered an order permitting plaintiffs to file a first amended complaint and defendants withdrew their motion to dismiss as moot. In count one of the first amended complaint filed in the present action, plaintiffs allege that defendants advised Leroy Yarnell and perhaps the other defendants in the state law suit not to cooperate with plaintiffs and not to comply with discovery requests and state court orders. Plaintiffs also allege that defendants suggested that the Yarnells refuse to sign consent forms to obtain copies of the Yarnells' income tax returns and copies of statements made to the IRS. In count two, plaintiffs allege that defendants advised the Yarnells to transmit business records and documents to defendants in an effort to conceal from plaintiffs the information and records necessary to prosecute their state law action. Plaintiffs allege that these actions were done with the intent to deprive plaintiffs of their right to due process of law, right to property, right to petition the courts for redress of grievances, right to privileges and immunities, and right to obtain a state judgment, and that they constituted violations of the First, Fifth, and Fourteenth Amendments of the Constitution, as well as the Article IV Privileges and Immunities Clause. Plaintiffs also allege that defendants' actions prejudiced plaintiffs' ability to prosecute their state law action by causing undue delay, increasing litigation costs, and severely reducing the likelihood that plaintiffs would obtain the relief they would have been entitled to receive in state court. Before the court is defendants' motion to dismiss plaintiffs' first amended complaint.

## II. Standard Of Review

■ Upon a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) or 12(c), all allegations in the complaint are to be accepted as true and construed in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *United States v. Mississippi,* 380 U.S. 128, 143, 85 S.Ct. 808, 816, 13 L.Ed.2d 717 (1965).

■ The court's inquiry is limited to whether the challenged pleadings set forth

allegations sufficient to make out the elements of a right to relief. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983), *cert. denied,* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984); *Great Lakes Steel v. Deggendorf,* 716 F.2d 1101, 1105 (6th Cir.1983). The complaint should not be dismissed unless it appears without doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Lee v. Western Reserve Psychiatric Habilitation Ctr.,* 747 F.2d 1062, 1065 (6th Cir.1984).

### III. Analysis

Plaintiffs' first amended complaint alleges that defendants interfered with plaintiffs' prosecution of their state action by (1) advising Leroy Yarnell, and perhaps his sons as well, not to cooperate with plaintiffs in their state action; (2) advising the Yarnells to refuse to sign consent forms to enable plaintiffs to obtain copies of income tax returns from the IRS and copies of statements made by the Yarnells to the IRS; and (3) advising the Yarnells to transmit business records and documents to the IRS in an effort to conceal from plaintiffs the information and records necessary to prosecute plaintiffs' state court action. Defendants argue that the action should be dismissed because the law grants defendants immunity under the facts alleged in plaintiffs' first amended complaint.

Government officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This court must therefore determine whether defendants could have reasonably believed that their conduct was lawful in light of clearly established law and the information which they possessed at the time. *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987). "[I]f officers of reasonable competence could disagree on [the] issue, immunity should be recognized." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

Qualified immunity is an immunity from suit, not simply a defense to liability. *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). In order to avoid dismissal where the defense of qualified immunity is available, a plaintiff:

> must plead facts which, if true, describe a violation of a clearly established statutory or constitutional right of which a reasonable public official, under an objective standard would have known. The failure to so plead precludes a plaintiff from proceeding further, even from engaging in discovery since the plaintiff has failed to allege acts that are outside the scope of the defendant's immunity.

*Dominque v. Telb,* 831 F.2d 673, 676 (6th Cir.1987). Therefore, the court must determine whether the facts plead in plaintiffs' complaint describe a violation of a clearly established constitutional right of which a reasonable public official would have known. The court must first determine whether a clearly established right was allegedly violated. *Guercio v. Brody,* 911 F.2d 1179, 1184 (6th Cir.1990), *cert. denied,* 500 U.S. 904, 111 S.Ct. 1681, 114 L.Ed.2d 76 (1991). Then, the court must determine whether a reasonable official should have known that his conduct violated that right. *Id.*

Alleging the violation of a broad constitutional right is insufficient to establish the violation of a clearly established right for purposes of overcoming qualified immunity. The right allegedly violated must be clearly established in a much more particularized sense than a broad constitutional right. *Anderson v. Creighton,* 483 U.S. at 640, 107 S.Ct. at 3039. "The contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." *Id.* The particularity requirement does not mean that the very action in question has been held unlawful, but the illegality of the action must be apparent in light of the preexisting law. *Danese v. Asman,* 875 F.2d 1239, 1242 (6th Cir.1989), *cert. denied,* 494 U.S. 1027, 110 S.Ct. 1473, 108 L.Ed.2d 610 (1990).

In determining whether a right is clearly established, the court must "look first to

decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits." *Daugherty v. Campbell,* 935 F.2d 780, 784 (6th Cir.1991), *cert. denied,* 502 U.S. 1060, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992). Decisions of other circuits are only sufficient "in an extraordinary case" to provide "clearly established" rights if they "both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Ohio Civil Serv. Employees Ass'n v. Seiter,* 858 F.2d 1171, 1177 (6th Cir.1988).

■ Defendants argue that even if the court accepts all the allegations in plaintiffs' first amended complaint as true, which the court must do in determining a motion to dismiss, plaintiffs have failed to allege the violation of a clearly established constitutional right. Defendants argue that the first amended complaint does not identify the relevance of the tax returns, statements, and documents in question to the state court action. Defendants also argue that they are not aware of any case precedent establishing that the mere giving of advice by a law enforcement officer to a private litigant relative to handling discovery requests could constitute a constitutional violation. Further, defendants argue that advice to a private litigant not to cooperate with his opposing party is not unconstitutional and opposing parties are often uncooperative.

Defendants argue that even if the Yarnells did follow defendants' alleged advice and refused to sign consent forms, plaintiffs could have sought relief from the Oakland County Circuit Court by moving for an order compelling the Yarnells to sign the consent forms. *See* Mich. Court Rule 2.313(A). If the Yarnells failed to comply with the state court's discovery order, plaintiffs could have sought

sanctions for non-compliance. The sanctions available include such remedies as costs, contempt, or even a default judgment against the offending party. *See* Mich. Court Rule 2.313(b). Defendants also argue that the same state remedies would be available to plaintiffs if the Yarnells had followed defendants' alleged advice to transfer their documents and records to the IRS in order to prevent plaintiffs from obtaining them for use in the Oakland County case. Since the Yarnells allegedly provided these documents and records to the IRS voluntarily, they were entitled to have them returned from the IRS at any time upon their request. *Vaughn v. Baldwin,* 950 F.2d 331 (6th Cir.1991). Under Mich. Court Rule 2.313(A), plaintiffs could have sought an order from the state court judge directing the Yarnells to request their documents from the IRS. Lastly, defendants argue that the allegations of the first amended complaint effectively conceded that the plaintiffs eventually succeeded in obtaining the Yarnell consent forms and Yarnell documents which they had voluntarily transferred to the IRS. Paragraphs 16, 17, 22, and 23 allege that the prejudice and damages suffered by plaintiffs as a result of defendants' alleged advice to the Yarnells were "delay in obtaining written consents" and "delay in obtaining the records necessary to prosecute their state action."

Plaintiffs argue, in their response to defendants' motion to dismiss, that the right to access to courts was a clearly established constitutional right, and therefore the qualified immunity defense is not applicable to this action. The Sixth Circuit has acknowledged that the right of access to the courts is a fundamental right guaranteed by the United States Constitution. *Graham v. National Collegiate Athletic Ass'n,* 804 F.2d 953, 959 (6th Cir.1986) (held that plaintiff's claim was not really a claim for violation of right to access to the courts, but rather a claim of retaliation for exercising his First Amendment rights).[2] Plaintiffs argue that defen-

---

**2.** The court finds the following portion of *Graham* particularly instructive to this action:

Graham cannot claim, however, that the defendants completely denied him access to the courts, since he successfully pursued his state court action to recover the value of his scholar-

ship and was able to file and pursue the present action, albeit unsuccessfully, in federal district court. Graham's claim is therefore not the typical right of access claim. Rather it is more accurately characterized as a claim of

dants' actions have denied them adequate, effective, and meaningful access to courts as required by the Constitution. *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Although the judiciary has long acknowledged the existence of the right of access to the courts, "the contours of the right can best be described as nebulous." *Crowder v. Sinyard,* 884 F.2d 804, 811 (5th Cir.1989). Plaintiffs rely heavily on two cases, *Ryland v. Shapiro,* 708 F.2d 967 (5th Cir.1983) and *Bell v. City of Milwaukee,* 746 F.2d 1205 (7th Cir.1984). Both cases involved situations where government officials interfered with plaintiffs' abilities to initiate actions by wrongfully concealing the facts surrounding the deaths of plaintiffs' decedents. In *Ryland,* the Fifth Circuit found that the constitutional right of access to the courts was violated where defendant state prosecutors impeded the ability of plaintiffs to file a wrongful death action against a fellow prosecutor who had murdered the plaintiffs' decedent. Defendants prevented plaintiffs from discovering the murder by concealing it for nearly one year, at which time the cover-up was exposed by the state attorney general. In *Bell,* the Seventh Circuit found that the constitutional right of judicial access was violated where the defendant police officers concealed the true facts concerning the shooting death of plaintiffs' decedent, thereby denying plaintiffs the opportunity to file a wrongful death lawsuit until twenty years after the death.

Both the Fifth and Seventh Circuits have limited the holdings of *Ryland* and *Bell* and have specifically held that the constitutional right to access to courts is not violated where a government official improperly interferes with a private litigant's right to discovery or commits other post-filing violations. In *Foster v. City of Lake Jackson,* 28 F.3d 425 (5th Cir.1994), the plaintiffs contended that the

right to access to courts, "protects against the discovery abuses claimed here." *Id.* at 428.[3] The Fifth Circuit specifically held that the right of access to courts encompassed a right to file an action, "but not the right to proceed free of discovery abuses after filing." *Id.* at 430 and n. 7 and 8. In *Thompson v. Boggs,* 33 F.3d 847 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1692, 131 L.Ed.2d 556 (1995), the plaintiff alleged that defendants, who were police officers, failed to set forth in their police reports key facts and thereby denied him effective access to the courts. The Seventh Circuit held that the facts known to Thompson were sufficient to enable him to promptly file the lawsuit, unlike *Bell,* where the facts were concealed and plaintiffs were denied the opportunity to file a lawsuit for twenty years. *Thompson v. Boggs,* 33 F.3d 847, 852–53 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1692, 131 L.Ed.2d 556 (1995). The Seventh Circuit concluded that the district court correctly dismissed the action. Thus, *Ryland* and *Bell* do not "point unmistakably to the unconstitutionality of the conduct complained of" in this case and are not "so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that [defendants' alleged] conduct, if challenged on constitutional grounds, would be found wanting." *Seiter,* 858 F.2d at 1177.

During oral argument, plaintiffs also argued that the Sixth Circuit has held that the facts of this case are sufficient to state a claim that a clearly established constitutional right was violated. The case cited by plaintiffs was *Fisher v. City of Cincinnati,* 753 F.Supp. 681 (S.D.Ohio 1990). As is clear by the cite of the case, the case is *not* a Sixth Circuit opinion. Further, the case does not support plaintiffs' argument that delay of discovery constitutes a violation of a clearly established constitutional right. In *Fisher,*

---

retaliation of the exercise of a First Amendment right.

*Id.* at 959. In the instant action, plaintiffs are currently pursuing their state court action. Plaintiffs have not alleged that defendants retaliated against them for exercising their First Amendment rights.

**3.** According to footnote 4, the plaintiffs alleged that defendants "intentionally failed to respond

to interrogatories concerning prior complaints about the traffic light; removed or destroyed the police dispatcher's log records in which the complaints were recorded; withheld the logs despite a document request; gave false deposition testimony regarding their knowledge of the malfunction; and induced police officers to remain silent about their knowledge of it." *Foster,* at 427, n. 4.

plaintiff alleged that defendants concealed the intoxication of an off-duty police officer, Kevin Schroeder, in connection with a collision involving a vehicle operated by Schroeder and a vehicle operated by plaintiff. A passenger in plaintiff's vehicle died and plaintiff was seriously injured. After the accident, plaintiff was charged with negligent vehicular homicide, allegedly as part of the cover-up of Schroeder's guilt. Plaintiff alleged that the police cover-up shielded Schroeder from liability until a second Grand Jury returned an indictment against Schroeder for aggravated vehicular homicide and driving while intoxicated. A day later, the charge against plaintiff was dismissed. The Grand Jury also returned indictments against two of the defendants for obstruction of justice and dereliction of duty. The situation in *Fisher* is very different than the situation in the instant action. In *Fisher,* defendants allegedly concealed the facts surrounding the collision and prevented plaintiff protecting himself from the criminal action filed against him and prevented plaintiff from instituting an action against Schroeder. In the instant action, plaintiffs were not prevented from instituting an action, but merely delayed in receiving their discovery requests. The right to access to courts as established in *Fisher* does not *clearly* establish that a delay in discovery during an ongoing action constitutes the violation of a constitutional right.

During oral argument, plaintiffs introduced *In re Cincinnati Radiation Litigation,* 874 F.Supp. 796 (S.D. Ohio 1995). In *In re Cincinnati,* plaintiffs were cancer patients whom government and university physicians allegedly subjected to radiation experiments under the guise that they were receiving cancer treatment. Plaintiffs did not learn of the defendants' conduct until twenty-two to thirty-four years after the conduct and alleged coverup took place. As a result, plaintiffs were unable to institute an action against defendants for over twenty years. Again, in the instant action, plaintiffs do not claim that they were prevented from instituting their action. The court does not find that *In re Cincinnati* shows that delay of discovery in an ongoing action constitutes a violation of a clearly established right.

The allegations in plaintiffs' first amended complaint, at most, suggest that defendants advised the Yarnells to be uncooperative in the discovery aspect of the case. According to the complaint, the only injury resulting to plaintiffs was a delay in receiving the requested documents. Where the actions of a defendant cause a delay in the plaintiff's prosecution of his suit, but not dismissal of the suit or some other concrete legal injury to plaintiff, there has been no constitutional violation. *Crawford–El v. Britton,* 951 F.2d 1314, 1321–22 (D.C.Cir. 1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 62, 121 L.Ed.2d 29 (1992). In *Joyce v. Mavromatis,* 783 F.2d 56 (6th Cir.1986), plaintiff alleged that she was injured in an automobile accident and that defendants sought to defeat her state court damage suit by altering the police report filed by the police officer who investigated the accident and by having new lines painted on the street at the intersection. The Sixth Circuit held that plaintiff's claim of denial of access to the courts did not state a cause of action because she had a right under Ohio law to file her damage suit and to offer proof about the accident and the alleged destruction of evidence. In the instant action, the first amended complaint fails to allege that the state court action has been dismissed or prejudiced in any way other than delayed access to certain documents. The complaint does include a general allegation that defendants' actions "prejudiced Plaintiffs' ability to prosecute their state action by ... severely reducing the likelihood of plaintiffs' obtaining the relief they would otherwise be entitled to in their state lawsuit, had Defendants not interfered with the state cause of action." First Amended Complaint, paras. 16, 22. However, neither the complaint nor plaintiffs' response to defendants' motion explain how the defendants' alleged advice could have resulted in a reduced likelihood that plaintiffs would succeed in the state cause, especially since it affirmatively pled that the plaintiffs eventually obtained the documents they sought. Conclusory, vague, and general allegations of a constitutional violation such as this one are insufficient to permit plaintiffs to

proceed with this action. *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir.1986).

### ORDER

Therefore, it is hereby **ORDERED** that defendants' motion to dismiss is **GRANTED**.

**SO ORDERED.**