33 F.3d 847
 30 Fed.R.Serv.3d 257
 Robert THOMPSON, Plaintiff-Appellant,
v.
Rod BOGGS, Police Officer of the City of Havana, Illinois,
Kevin W. Noble, Police Officer of the City of Havana,
Illinois, Tom Hardesty, Chief of Police of the City of
Havana, Illinois, et al., Defendants-Appellees.
Robert THOMPSON, Plaintiff,
and
Brad Bailey, Appellant,
v.
Rod BOGGS, Police Officer of the City of Havana, Illinois,
Kevin W. Noble, Police Officer of the City of Havana,
Illinois, Tom Hardesty, Chief of Police of the City of
Havana, Illinois, et al., Defendants-Appellees.
 Nos. 93-2891, 93-2892.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 7, 1994.
Decided Aug. 31, 1994.
Rehearing and Suggestion for Rehearing En Banc Denied Nov. 8, 1994.
 
 Richard L. Steagall (argued), John P. Nicoara, Nicoara & Steagall, Peoria, IL, for Robert C. Thompson.
 William A. Allison, Allison & Kelly, Bloomington, IL (argued), for Rod Boggs, Kevin W. Noble, Tom Hardesty and City of Havana, Ill.
 Before CUDAHY and COFFEY, Circuit Judges, and NORGLE, District Judge.*
 COFFEY, Circuit Judge.
 
 
 1
 Robert Thompson filed this Sec. 1983 suit alleging a number of claims against the defendants arising from his July 29, 1989 arrest by Havana, Illinois, Police Officer Rodney Boggs. Thompson was arrested following a high speed chase during which, according to Officer Boggs' Offense Report, Thompson was observed and believed to be "DUI, [driving with a] revoked [license], reckless [driving], fleeing [an officer, and] speeding." Prior to trial, the court granted summary judgment on several of the claims and during the trial, the court granted judgment as a matter of law on the claim against Officer Kevin Noble (for failing to prevent Boggs' alleged use of excessive force). Thus, only one claim, Boggs' alleged use of excessive force against Thompson, was presented to the jury which returned a verdict in favor of the defendant, Officer Boggs. We affirm.
 
 I. BACKGROUND
 A. Facts
 
 2
 The evidence at trial disclosed the following information. Officer Boggs testified that on July 29, 1989, he observed Thompson driving a motorcycle with a female passenger. Having prior knowledge of Thompson's driving record, Boggs suspected that Thompson was operating the motorcycle without a valid operator's license. Boggs stated that he followed Thompson in his squad car, radioed his dispatcher and received confirmation that Thompson's Illinois driver's privileges had been revoked. Upon receipt of this information Boggs activated his squad car's lights and siren in an attempt to apprehend and interview Thompson. Rather than pulling to the side of the road as required by Illinois statute, Thompson accelerated and sped away. Officer Noble, also on duty that evening, testified that he heard the dispatcher's radio report over the air of Thompson fleeing, and joined in the pursuit of Thompson. In separate police cars, with sirens and multi-colored lights activated, Officers Boggs and Noble pursued Thompson through the outskirts of the City of Havana, Illinois, and toward the Mason District Hospital. During the chase, Thompson sped through at least three stop signs and reached speeds in excess of sixty miles per hour along the city's streets. Believing that Thompson's motorcycle was heading for the hospital's parking lot, Officer Noble stated that he drove his vehicle to the rear exit of the hospital lot and positioned his vehicle sideways, blocking a portion of the exit. As he did this, Thompson, still being pursued by Boggs, rounded the corner of the hospital, nearly striking people leaving the facility. Seeing Officer Noble's squad car ahead, Thompson braked, skidded, and collided with the left front fender of Officer Noble's squad car. Thompson's passenger was catapulted over the hood of the squad car and on to the pavement while Thompson was thrown to the roadway.
 
 
 3
 Officer Boggs testified that following the collision, he immediately stopped his squad car, exited, and ran towards Thompson. According to Boggs, it appeared to him that Thompson was getting up and preparing to flee on foot (Boggs described Thompson's position as "a sprinter's starter's position"), so Boggs "tackled" Thompson by "kind of thr[owing] my body into his, and when we ended up, he was on his back and I was sort of laying on top of him." Boggs testified that he then straddled Thompson, rolled him onto his stomach, and placed the lower part of his leg across Thompson's lower back to restrain the suspect because Thompson was struggling in an attempt to escape. Boggs claimed that after handcuffing Thompson, he yelled to spectators to get medical help. Officer Noble testified that after Boggs arrested Thompson, he (Noble) left his squad car and assisted the young woman who had been thrown from the motorcycle when it came in contact with Noble's police car. A subsequent medical examination of Thompson revealed that he had suffered a compression fracture of a vertebrae in his lower back.
 
 
 4
 At trial, Thompson testified that as he rounded the hospital and approached the rear exit of the parking lot, Officer Noble's squad car "speeded up to cut me off. And as he did so, [his squad car] hit me. I didn't hit him." Thompson asserted that his back was injured when, following the collision, Boggs lifted him off the ground, threw him back down, and jammed his knee into Thompson's back. Thompson further recounted that he drifted in and out of consciousness (he testified that after colliding with Officer Noble's squad car he "noticed" that he "was out"), that he "don't [sic] remember no [sic] pain in my back until someone come [sic] down on my back," and claimed that he did not struggle with Officer Boggs nor ever attempt to flee on foot.
 
 B. Procedural History
 
 5
 Thompson sued Officer Rodney Boggs and fellow Officer Kevin Noble in their individual capacities, claiming that Boggs used excessive force when effecting an arrest in violation of the Fourth Amendment, and that Officer Noble intentionally failed to prevent Boggs from using the alleged excessive force. In addition, Thompson maintained that both officers denied him his first amendment right of access to the courts because the officers in their police reports failed to set forth that Officer Boggs had used excessive force during the arrest. Finally, Thompson asserted a claim against the City of Havana, Illinois, and Thomas Hardesty, its police chief, asserting that Hardesty and the City had a custom or policy condoning Boggs' use of excessive force. Plaintiff's cause of action was based upon his allegation that "Officer Boggs has exhibited his tendency to use excessive force on [four occasions subsequent to] the July 29, 1989 occurrence involving Plaintiff[,]" as well as on one occasion prior to Thompson's arrest, and that neither Police Chief Hardesty nor the City authorities had ever investigated allegations of Boggs' use of excessive force nor disciplined him for his allegedly illegal behavior.[1]
 
 
 6
 Arguing that Thompson had failed to state claims upon which relief could be granted, Officers Boggs and Noble moved to dismiss the claim that Boggs had used excessive force, that Noble had failed to prevent Boggs' use of excessive force, and that Thompson had been denied access to the courts. The judge denied the defendants' motions to dismiss with respect to Thompson's assertion 1) that Boggs used excessive force and 2) that Noble failed to prevent the use of excessive force, finding that Thompson's claims were cognizable and sufficiently supported by factual allegations. The district court dismissed Thompson's cause of action asserting a denial of access to the courts, stating that "Plaintiff, in essence, has alleged that Defendants Boggs and Noble failed to admit to using excessive force when arresting Plaintiff because the officers did not recite the incident identical to how Plaintiff perceived it. There is a substantial difference between allegations that the police concealed or falsified documents and claims that the police failed to state a legal conclusion in a police report. Plaintiff's assertions amount to the latter and are wholly insufficient to state a claim under Sec. 1983."
 
 
 7
 Thompson then moved the court for a grant of summary judgment on his allegation that Noble illegally used his squad car as a roadblock. Noble responded that Thompson had not previously asserted this particular cause of action in either his original complaint, amended complaint, or second amended complaint, to which Thompson replied that he had just learned of the existence of the illegal seizure claim during discovery. Thompson moved to amend his complaint for a third time to specifically include the illegal seizure claim. The district judge denied Thompson's motion to amend his second amended complaint because Thompson, who was involved in the incident, had knowledge for almost four years that Noble used his car as a roadblock and that the case upon which plaintiff based his illegal seizure claim, Brower v. County of Inyo, 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989), had been decided prior to the time Thompson filed suit.
 
 
 8
 Subsequently, the City of Havana, Illinois, and Police Chief Hardesty moved for summary judgment on plaintiff's contention that there existed a municipal policy of condoning Officer Boggs' use of excessive force by failing to discipline Boggs. After examining the affidavits of the alleged victims, the court granted the defendants' motion for summary judgment, finding that the four allegations of Boggs' excessive use of force occurring after the Thompson incident (July 29, 1989) were "not sufficiently similar in pattern or close in time to the incident involving Plaintiff to be admitted against the Defendants in order to establish a custom, policy, or practice of tolerating excessive force." Thus, the single incident which occurred prior to the Thompson arrest remained for the court's consideration. With respect to that prior incident, the court noted that the police chief invited the alleged victim, Jay Haas, to pursue an investigation, but that Haas declined the opportunity. Since the court limited its consideration to the single prior incident of Boggs' alleged excessive use of force, and because the purported victim of that incident refused to file a claim for the use of excessive force, the court concluded that "Plaintiff does not have sufficient evidence from which a jury could reasonably find for him that the City had a municipal policy of ... inadequately investigating allegations of excessive force." The final pretrial motion concerned appellant Brad Bailey, who moved to join Thompson's suit as a plaintiff. Like Thompson, Bailey asserted claims that he was a victim of Officer Boggs' use of excessive force and that by failing to discipline Officer Boggs, the police chief and the City maintained a policy or custom of condoning Boggs' use of excessive force. Bailey's joinder motion was denied without explanation.
 
 
 9
 A jury trial was conducted on plaintiff's two remaining claims--that on July 29, 1989, Boggs used excessive force when arresting Thompson and that Noble intentionally failed to prevent Boggs' alleged use of excessive force on Thompson. At the conclusion of plaintiff's case-in-chief, the trial judge granted Officer Noble's motion pursuant to Federal Rule of Civil Procedure 50(a) for judgment as a matter of law (formerly motion for a directed verdict), finding that "[t]here is no evidence of a prolonged encounter between Officer Boggs and the Plaintiff. Rather, the evidence demonstrates that the [collision and subsequent arrest] happened very quickly thereby denying Officer Noble a realistic opportunity to prevent Officer Boggs from tackling and cuffing Plaintiff." In addition, the court noted that "Plaintiff's expert never rendered an opinion as to whether Noble violated the accepted standard of care." On Thompson's remaining claim (excessive use of force by Officer Boggs), the jury returned a verdict in favor of Officer Boggs. Thompson appeals.
 
 II. ISSUES
 
 10
 (1) Whether the trial court's dismissal of Thompson's denial of access to the courts claim was proper; (2) whether the court's denial of Thompson's motion to amend his pleadings for the third time to include an illegal seizure claim, after the court had granted the plaintiff the opportunity to amend his pleadings on two prior occasions in this case, was proper; (3) whether the judge committed error in granting summary judgment to the defendants on Thompson's claim against the City of Havana, Illinois, and its police chief for condoning Boggs' alleged repeated use of excessive force; (4) whether the trial court's evidentiary rulings were erroneous; (5) whether the grant of Officer Noble's motion for judgment as a matter of law was proper; and (6) whether the district judge erred in denying the joinder of Brad Bailey as a plaintiff in Thompson's suit.
 
 III. DISCUSSION
 
 11
 A. Dismissal of Thompson's Access to Courts Claim
 
 
 12
 Thompson contends that Officers Boggs and Noble denied him access to the courts through their failure to set forth in their police reports the key facts that Boggs "lifted plaintiff from the pavement, threw him down to the pavement on his stomach, and then jumped onto plaintiff's back with a large amount of force." He alleges that by concealing critical facts from him which would form the basis of his claim for redress, the officers denied him effective and meaningful access to the courts.
 
 1. Standard of Review
 
 13
 We review the grant of a motion to dismiss de novo. Johnson v. Martin, 943 F.2d 15, 16 (7th Cir.1991). "When reviewing the grant of a motion to dismiss, we must take as true all well-pleaded factual allegations and make all possible inferences in favor of the plaintiff." Id. "A complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " Id. (citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).
 
 2. Analysis
 
 14
 In support of his claim that he was denied effective and meaningful access to the courts, Thompson relies on Bell v. Milwaukee, 746 F.2d 1205 (7th Cir.1984). In Bell, Daniel Bell was shot and killed by Thomas Grady, a Milwaukee police officer. Another officer, Louis Krause, observed Grady plant a knife in the deceased Bell's hand, and both officers falsely claimed in their respective police reports that Grady shot Bell because Bell had threatened Grady with the knife. Twenty years later, Krause revealed that he and Officer Grady had covered up the true circumstances of Daniel Bell's death. Bell's relatives and estate sued the City of Milwaukee, the police department, and the two officers alleging, among other things, that the cover-up of the shooting deprived them of their due process right of access to the courts because by concealing the true facts, the officers prevented Bell's family members from realizing that they had a cause of action and seeking redress. This court agreed that there was a constitutional right of access to the courts. Id. at 1261. Observing that under Bounds v. Smith, 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977), "judicial access must be 'adequate, effective, and meaningful'[,]" we stated that "[t]o deny such access defendants need not literally bar the courthouse door or attack plaintiffs' witnesses. This constitutional right [of access to the courts] is lost where, as here, police officials shielded from the public and the victim's family key facts which would form the basis of the family's claim for redress." Bell, 746 F.2d at 1261. The officers' willful and intentional concealment of the truth "rendered hollow" the right of Bell's survivors to seek redress. Id.
 
 
 15
 The facts in Thompson's case are quite unlike the unique facts in Bell. Most significantly, unlike Bell's survivors, the plaintiff Thompson herein was not deprived of adequate, effective, or meaningful access to the courts because he was personally involved in the incident and thus had firsthand knowledge of all the facts and circumstances surrounding his arrest. Thompson obviously was present at the scene and he recalled that "someone come down on my back." In addition, the plaintiff called two disinterested eyewitnesses to the arrest, Patti Lynch and Jeffrey Cooper, both of whom observed and testified concerning the facts and circumstances surrounding Officer Boggs' arrest of Thompson.[2] Finally, the facts known to Thompson concerning the arrest were sufficient to enable him to promptly file the instant lawsuit unlike Bell, where the true facts were concealed thereby denying the plaintiffs the opportunity to file a lawsuit until some twenty years after the fact. Thus, because Thompson was not prohibited from seeking effective and meaningful redress in court, we conclude that under these facts the court did not err in dismissing Thompson's denial of access to the courts claim.
 
 
 16
 B. Denial of Motion to Amend Second Amended Complaint
 
 
 17
 Thompson next contends that the court erred in denying his motion to amend his second amended complaint to include an illegal seizure claim under Brower against Officer Noble, claiming that he was "seized" within the meaning of the Fourth Amendment when Noble allegedly positioned the squad car in the path of his motorcycle.[3] Thompson argues that he "did not know for certain he had a seizure claim against Officer Noble until he took [Noble's] deposition" to question Noble about his intent in using the squad car to arrest or seize him. He asserts that "[t]he complaint put Officer Noble [on notice] that his conduct ... in operating the squad car would also be an issue."
 
 
 18
 "[G]ranting or denying a motion for leave to file an amended pleading is a matter purely within the sound discretion of the district court." J.D. Marshall Int'l, Inc. v. Redstart, Inc., 935 F.2d 815, 819 (7th Cir.1991) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)). "Leave to amend the pleadings may be denied for 'apparent or declared reasons' such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.' " Id. (citing Foman, 371 U.S. at 182, 83 S.Ct. at 230). "Therefore, a district court's denial of a motion to amend pleadings under Fed.R.Civ.P. 15(a) will be overturned on appeal only if it is shown that the district court abused that discretion by refusing to grant the leave without any justifying reason." Id.
 
 
 19
 We are of the opinion that the district judge did not abuse his discretion, after having allowed the plaintiff to amend his original pleading on two previous occasions, in refusing to allow Thompson to amend his complaint a third time to include an illegal seizure claim against Officer Noble. Thompson's proposed third amendment, which the trial court denied, came some three years and nine months after the collision between Thompson's motorcycle and Officer Noble's squad car, and less than one month before the case was set for trial and the trial was convened. "There must be a point at which a plaintiff makes a commitment to the theory of its case." Johnson v. Methodist Medical Center, 10 F.3d 1300, 1304 (7th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 2102, 128 L.Ed.2d 664 (1994). Thompson and his counsel were certainly aware that he could have asserted an illegal seizure claim against Officer Noble before taking Noble's deposition; not only had Brower been decided prior to the day of the Thompson-Noble collision, but all three of Thompson's complaints noted that as he rounded the corner of the hospital he observed a police car "parked crosswise in the lot blocking his path of escape." We conclude that the district judge did not abuse his discretion in denying Thompson's motion to file a third amended complaint.
 
 C. Alleged Trial Errors
 
 20
 1. Evidence of Habit or Practice of Using Excessive Force
 
 
 21
 Thompson contends that the trial court erred in refusing to admit evidence (the affidavits from the other alleged victims and witnesses) that Boggs used excessive force on occasions other than July 29, 1989 (date of Thompson arrest). He submits that under Fed.R.Evid. 406 the affidavits are admissible as evidence establishing a habit or routine practice on Boggs' part. Thompson has failed to develop his argument or cite any legal authority, thus, under our Circuit's precedent, the argument is waived. First Indiana Bank v. Baker, 957 F.2d 506, 508 (7th Cir.1992) ("[the appellant] has waived this issue, for he has failed to cite any pertinent authority for his argument ..."); United States v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir.1991) ("[w]e repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"), cert. denied, --- U.S. ----, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993). Even if Thompson had not waived the issue, he would not be entitled to relief for the following reasons.
 
 
 22
 In Wheeler v. Sims, 951 F.2d 796 (7th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 320, 121 L.Ed.2d 241 (1992), we noted that "the appellant carries a heavy burden in challenging a trial court's evidentiary rulings on appeal because 'a reviewing court gives special deference to the evidentiary rulings of the trial court.' Thus, we will reverse such rulings only upon a showing that the trial court committed an abuse of discretion." Id. at 801-02 (quoting United States v. Briscoe, 896 F.2d 1476, 1489-90 (7th Cir.), cert. denied, 498 U.S. 863, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990)) (internal quotations omitted). "[T]he abuse of discretion standard is met only when the trial judge's 'decision is based on an erroneous conclusion of law or where the record contains no evidence on which he rationally could have based that decision, or where the supposed facts found are clearly erroneous.' " Id. (quoting Deitchman v. E.R. Squibb & Sons, Inc., 740 F.2d 556, 563-64 (7th Cir.1984)).
 
 
 23
 Federal Rule of Evidence 406 provides that:
 
 
 24
 "Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice."
 
 
 25
 As the Advisory Committee noted in its Comment to Rule 406, habit "describes one's regular response to a repeated specific situation." "[B]efore a court may admit evidence of habit, the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." Simplex, Inc. v. Diversified Energy Systems, Inc., 847 F.2d 1290, 1293 (7th Cir.1988).
 
 
 26
 "The party offering the evidence must establish the habitual nature of the alleged practice. * * * Although there are no precise standards for determining whether a behavior pattern has matured into a habit, two factors are considered controlling as a rule: adequacy of sampling and uniformity of response. * * * The factors focus on whether the behavior at issue occurred with sufficient regularity making it more probable than not that it would be carried out in every instance or in most instances. * * * The requisite regularity is tested by the ratio of reaction to situations. * * * It is essential, therefore, that the regularity of the conduct alleged to be habitual rest on an analysis of instances numerous enough to [support] an inference of systematic conduct and to establish one's regular response to a repeated specific situation."
 
 
 27
 United States v. Newman, 982 F.2d 665, 668 (1st Cir.1992), cert. denied, --- U.S. ----, 114 S.Ct. 59, 126 L.Ed.2d 28 (1993) (quotations and citations omitted) (emphasis added).
 
 
 28
 In the present case, the trial judge ruled that "[a]s stated by the Advisory Committee Comment to Rule 406, habit describes one's regular response to a repeated specific situation. The prior and post-event incidents in question do not establish that Officer Boggs uses excessive force as a regular response to making arrests. Therefore, the court concludes that Rule 404 is applicable. Accordingly, such evidence is inadmissible." A careful review of the affidavits Thompson submitted makes clear the fact that Thompson has failed to establish that Boggs regularly responded with excessive force in a "semi-automatic" way to the situations he encountered. For example, Harvey Riggins' affidavit states that Officer Boggs struck him in the leg with a nightstick during a traffic stop. However, the same affidavit also recounts that prior to the contact, Riggins had stepped out of the car and "got into it"[4] with Boggs' colleague, Officer Seward, and that when Boggs attempted to place Riggins under arrest, Riggins stated that he "didn't do nothing [sic]" but admits he pulled his arm away from Boggs in an attempt to resist arrest.
 
 
 29
 Another alleged victim of Officer Boggs' excessive force, Jay Haas, averred that at the Havana Police Department following his arrest for driving under the influence of alcohol, Troy Barnett, a police dispatcher, held his (Haas') arms while Boggs struck him. However, in his affidavit Haas admitted that prior to the alleged use of force he was "upset" because it was his birthday and his girlfriend was having difficulty obtaining bond for his release. After speaking with his girlfriend on the phone, he "slammed [a] phone down ... knock[ing] the dial tone out." Haas stated that when he broke the phone, Boggs called him a name, and that as a result he "got a little rowdy" and "said a few things [to Boggs] I didn't mean." It was at this point that Boggs allegedly struck Haas while Barnett held Haas' arms.
 
 
 30
 Finally, the affidavits of Roy Peters and Dan Flaherty, two more alleged victims of Boggs' excessive force, assert in conclusory fashion that Boggs used excessive force. They fail to set forth any details or specifics concerning how or under what conditions Boggs was supposed to have used excessive force, thus making it impossible to infer that Boggs' behavior was "semi-automatic" in nature. See Simplex, Inc., 847 F.2d at 1293.[5]
 
 
 31
 In addition, with respect to the Thompson incident, it must be kept in mind that Boggs' arrest of Thompson came after a high-speed pursuit in which Thompson ran several stop signs and endangered people's lives while reaching speeds in excess of sixty miles per hour through the city and into the hospital parking lot. Furthermore, we must point out that the plaintiff's complaint acknowledged that Thompson had been attempting to elude the police, and we are of the opinion that Thompson's reckless driving while under the influence of alcohol endangered the lives of the officers and the individuals who were leaving the hospital when Thompson sped by. After the plaintiff, Thompson, collided with Officer Noble's squad car and had fallen to the ground, he crouched into a position resembling a sprinter's starting position, as if ready to continue his flight on foot. Officer Boggs tackled Thompson in an attempt to forestall his flight.
 
 
 32
 The affidavits presented in the five additional incidents and the evidence before us fails to demonstrate a habit of using excessive force. We agree with the trial court that the five unsubstantiated incidents of Officer Boggs' alleged excessive force, without any evidence of the total number of contacts Officer Boggs had with citizens or the number of arrests he performed, fail to satisfy the plaintiff's burden of demonstrating that Boggs' "regular response to a repeated specific situation" was the "systematic" use of excessive force. Newman, 982 F.2d at 668. Thompson has failed to establish that "the requisite regularity is tested by the ratio of reaction to situations." Id. (internal quotations omitted). Thus there is insufficient evidence to conclude that "the behavior at issue occurred with sufficient regularity making it more probable than not that it would be carried out in every instance or in most instances." Id. (internal quotations omitted). We therefore conclude the trial court did not err in refusing to admit evidence that Boggs used excessive force on his arrestees as a matter of habit.[6]2. Evidence that Boggs Violated the City's Policy on
 
 High-Speed Pursuits
 
 33
 Thompson contends that the court abused its discretion when it prohibited him from mentioning during trial that Boggs' pursuit of him may have violated the City of Havana's general rule discouraging high-speed vehicular pursuits of traffic offenders.[7] Once again, Thompson's allegation fails to cite any legal authority in support of his argument that the court abused its discretion in precluding him from mentioning the City's general rule against such chases. Therefore, Thompson has waived the argument. First Indiana Bank, 957 F.2d at 508; Berkowitz, 927 F.2d at 1384 ("[w]e repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"). In any event, we agree with the district court's conclusion that a violation of Havana's policy against the pursuit of traffic offenders was irrelevant. Evidence that Boggs may have violated City policy by pursuing Thompson at a high speed was irrelevant to the issue of whether Boggs used excessive force when arresting Thompson in the hospital parking lot.
 
 
 34
 3. Characterizing Boggs' and Noble's Police Reports as
 
 
 35
 "False"
 
 
 36
 Thompson submits that the court erroneously prohibited him from characterizing Officers Boggs' and Noble's police reports as "false" and further alleges that the court ruled that the officers' reports were credible as a matter of law. Once again, he has waived the issue by failing to cite any authority in support of his argument. Id. Moreover, contrary to Thompson's contention, the trial court did not rule that the police reports were credible as a matter of law. Rather, the court observed that "the police reports in question are not 'false' simply because they are not in agreement with reports of other witnesses." The court specifically ruled that the reports could be used to refresh the witnesses' recollection and Thompson was able to thoroughly cross-examine both Boggs and Noble about their involvement in apprehending Thompson. Thus, we conclude the court did not err in prohibiting Thompson from characterizing the police reports as false.
 
 4. Jury Instruction
 
 37
 Thompson argues that the court committed reversible error when it refused to submit Thompson's proposed Jury Instruction No. 16, based on Illinois Pattern Instruction 12.04.[8] The record discloses that the court heard argument from the parties' attorneys on each proposed instruction, and that when the court stated "we will not give No. 16," counsel for Thompson remained silent and did not object to the judge's decision. As we stated in Stachniak v. Hayes, 989 F.2d 914, 920 (7th Cir.1993), "Rule 51 of the Federal Rules of Civil Procedure provides that '[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.' " "[I]f a party fails to make a specific, timely jury instruction objection during trial, an argument regarding that jury instruction is deemed to be waived for purposes of appeal." Id. Thompson has waived the issue for appellate review.
 
 
 38
 D. Judgment as a Matter of Law for Officer Noble: Alleged
 
 Failure to Intervene
 
 39
 The plaintiff-appellant alleges that the trial judge erred in granting Officer Noble's motion for judgment as a matter of law (Fed.R.Civ.P. 50(a)) with respect to Thompson's claim that Noble failed to prevent Boggs from using excessive force against him. The court granted the motion at the conclusion of the plaintiff's case-in-chief after finding that "[t]here is no evidence of a prolonged encounter between Officer Boggs and Plaintiff. Rather, the evidence demonstrates that the whole incident happened quickly thereby denying Officer Noble a realistic opportunity to prevent Officer Boggs from tackling and cuffing Plaintiff." "We review a Fed.R.Civ.P. 50(a) directed verdict [judgment as a matter of law] de novo, considering the evidence in the light most favorable to the nonmoving party. We will reverse the judgment only if enough evidence exists that might sustain a verdict for the non-moving party." Continental Bank, N.A. v. Modansky, 997 F.2d 309, 312 (7th Cir.1993).
 
 
 40
 "An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance." Gaudreault v. Salem, 923 F.2d 203, 207 n. 3 (1st Cir.1990), cert. denied, 500 U.S. 956, 111 S.Ct. 2266, 114 L.Ed.2d 718 (1991). However, "[a] police officer cannot be held liable for failing to intercede if he has no 'realistic opportunity' to prevent an attack." Id. (citing O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir.1988)) (emphasis added).
 
 
 41
 In this case, the undisputed testimony established that Officer Noble did not have an opportunity to participate in the physical apprehension of Thompson or to assist or prevent Boggs from acting as he did because Officer Boggs' restraining and controlling of Thompson was accomplished before Officer Noble even had an opportunity to get out of his squad car. Officer Noble testified as follows:
 
 
 42
 Q.: All right. What happened after this collision?
 
 
 43
 A.: Well, I said it took me kind of off guard. The motorcycle, the persons on the motorcycle just kind of disappeared from my peripheral vision. You know, there was just nobody in front of me. It was just gone. And it took me a few seconds, and Officer Boggs had run past.
 
 
 44
 Q.: Did you see him run past?
 
 
 45
 A.: Yes, I remember him just in front of my squad car.
 
 
 46
 Q.: All right. What did you do then?
 
 
 47
 A.: I put the car in park and exited my car and went to the aid of the passenger, the female.
 
 
 48
 Q.: What were Officer Boggs and Thompson doing as you went to the aid of the female?
 
 
 49
 A.: Well, the best I recall, Officer Boggs seemed to have the situation under control. I did not observe anything specifically that drew my attention to them.
 
 
 50
 Q.: Did you see Officer Boggs jump with his knee on Thompson's back?
 
 
 51
 A.: No, I did not. No, I did not.
 
 
 52
 Q.: Could you have seen that if it would have happened?
 
 
 53
 A.: Not in that time frame. I was not out of the car.
 
 
 54
 Because the evidence established that Noble did not have a realistic opportunity to prevent Boggs from using excessive force (even if Boggs had used excessive force, which of course the jury determined was not the case), we hold the district court did not err in granting Noble's motion for judgment as a matter of law.
 
 E. Joinder
 
 55
 Thompson and appellant Brad Bailey contend that the court erred in refusing Bailey's motion to be joined as a plaintiff under Rules 20 and 21 of the Federal Rules of Civil Procedure. Bailey, like Thompson, alleges both that he was a victim of Officer Boggs' excessive use of force and that the City of Havana, Illinois, had a municipal policy of condoning Boggs' use of excessive force. Specifically, Bailey contends that on March 7, 1991, following a traffic stop during which he had been arrested for driving under the influence, Officer Boggs repeatedly struck him with his nightstick and fists while he (Bailey) was handcuffed. Bailey, who was represented by the same attorney as Thompson, moved to join as a plaintiff in Thompson's lawsuit and thus obtain a joint trial. The district court affirmed the magistrate judge's denial of Bailey's joinder motion, noting that "[t]he court finds no justification for adding Mr. Bailey to this case[.]" Neither the magistrate judge nor the district court gave any reasoning for their respective rulings.[9]
 
 
 56
 We review the denial of a motion to join a party for an abuse of discretion. Intercon Research Assoc., Ltd. v. Dresser Industries, Inc., 696 F.2d 53, 56 (7th Cir.1982) (" '[t]he grant or denial of a motion to bring or drop a party lies in the discretion of the judge.... The trial court's exercise of discretion will not be disturbed on appeal unless an abuse is shown' ") (quoting 7 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE Sec. 1688 (1972)); see also Arrington v. Fairfield, 414 F.2d 687, 693 (5th Cir.1969) ("[t]he provisions for permissive joinder under Rule 20 are very broad and the court is given discretion to decide the scope of the civil action and to make such orders as will prevent delay or prejudice"); Allied Chem. Corp. v. Strouse, Inc., 53 F.R.D. 588, 589 (E.D.Pa.1971) (holding that possible delay in the trial is a sufficient basis to deny joinder of a new party).
 
 
 57
 In this case, the record discloses that Bailey's allegation of Boggs' excessive use of force was based on an incident occurring on March 7, 1991 (almost two years after the Thompson arrest); this incident concerns a separate occurrence, with a set of facts and circumstances that do not even resemble those upon which Thompson's suit was based. Moreover, the motion to join Bailey was made over a year after the initiation of Thompson's lawsuit and would have delayed adjudication of Thompson's claims (which arose some three years prior to Bailey's joinder motion). We agree with the trial judge's determination denying Bailey's joinder motion for adding Bailey to the lawsuit would only serve to confuse the jury by trying two separate and distinct injury claims and bringing in additional defendants (Bailey makes allegations against an Officer Ray and Deputy Barnes). Since there is no prejudice to Bailey in denying joinder, we conclude the trial court did not abuse its wide discretion in denying Bailey's motion for joinder.[10]
 
 
 58
 F. Summary Judgment for the City and the Police Chief
 
 
 59
 Thompson next contends the court erred in granting summary judgment in favor of the City of Havana, Illinois, and Police Chief Hardesty on his claim that the City and the police chief had a policy or custom of approving Officer Boggs' use of excessive force, as evidenced by their alleged failure to investigate Boggs' use of excessive force and discipline him for his unlawful actions. Thompson argues summary judgment was inappropriate because he presented evidence establishing that Boggs engaged in a pattern of using excessive force against arrestees. Specifically, Thompson points to the fact that he submitted affidavits from victims and witnesses of Officer Boggs' alleged use of excessive force on five separate occasions occurring over a twenty-two month period. Thompson claims that the City's and Police Chief Hardesty's failure to discipline Boggs after any or all of these incidents sufficiently establishes the existence of a municipal policy condoning Boggs' use of excessive force, or at least demonstrates their deliberate indifference toward Boggs' use of force. Thompson makes his allegation even though the defendants submitted an affidavit from the police chief that 1) Police Chief Hardesty required his officers to make written reports of their activities, 2) if the reports indicated that an officer used force against another person, Hardesty would investigate by questioning the officer about what happened, 3) if Hardesty was not satisfied with the information in the report and officer's explanation, he would conduct further investigation, 4) officers found to have used excessive force were disciplined, and 5) the City had a written policy which required that the "officers use only such force as was necessary under the circumstances." Hardesty Affidavit at p 8.
 
 
 60
 In Los Angeles v. Heller, 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (per curiam ), the Supreme Court addressed a similar situation in which after a jury found that a police officer had not used excessive force when apprehending a suspect, the trial court dismissed the claim against the city because once "the police officer had been exonerated by the jury there could be no basis for assertion of liability against the city or the persons constituting its Police Commission." Id. at 798, 106 S.Ct. at 1572. The Supreme Court agreed with the trial court, holding "this was an action for damages, and neither Monell v. New York City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm." Id. at 799, 106 S.Ct. at 1573. The Court added "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." Id. Thus, to prevail on a Monell claim, the plaintiff must establish (1) that he suffered a constitutional injury, e.g., he was a victim of excessive force by a police officer, and (2) that the city authorized or maintained a custom of approving the unconstitutional conduct.
 
 
 61
 In the instant case, the plaintiff is asserting that the trial court erroneously granted summary judgment on the claim against the City and the police chief (the Monell claim). Even if there was error, it was harmless under Fed.R.Civ.P. 61, because the jury verdict in favor of Officer Boggs on the question of whether he used excessive force precludes the possibility that Thompson could prevail on his Monell claim. Heller, 475 U.S. at 799, 106 S.Ct. at 1573; see also Tom v. Voida, 963 F.2d 952, 962 (7th Cir.1992) ("because [the officer] did not violate [the plaintiff's] constitutional rights, there is no basis for liability against the other defendants either") (citing Heller ); Myatt v. City of Chicago, 816 F.Supp. 1259, 1264 (N.D.Ill.1992) ("[i]f the individual officers are not held liable, the City cannot be held liable under a Monell claim") (citing Heller ).[11]
 
 IV. CONCLUSION
 The judgment of the district court is
 
 62
 AFFIRMED.
 
 
 63
 CUDAHY, Circuit Judge, concurring.
 
 
 64
 I agree with the majority's disposition of the case on the merits. I disagree, however, with the majority's holding that the plaintiffs have waived their challenges to the evidentiary rulings (a holding rendering the majority's subsequent discussions of the rulings dicta). The plaintiffs provided brief but fully comprehensible treatment of the issues in their briefs, and squarely presented to the court their claims. In the circumstances of the case, we are not required to find the argument waived simply because the plaintiff failed to cite relevant case law. See, e.g., Commodity Futures Trading Comm'n v. Collins, 997 F.2d 1230, 1234 (7th Cir.1993) (waiver a flexible determination).
 
 
 
 *
 Judge Charles R. Norgle, Sr., of the Northern District of Illinois, sitting by designation
 
 
 [1]
 Thompson was permitted to amend his original complaint twice
 
 
 [2]
 Lynch testified that she thought Boggs treated Thompson "gently" while Cooper thought Boggs was "a little bit rough" considering Thompson had just been in an accident
 
 
 [3]
 In Brower, the Supreme Court considered a police department's use of a "deadman" roadblock to end a high-speed chase. A deadman roadblock is the positioning of a heavy and large obstacle in the road so as not to be visible to the oncoming fleeing driver. The Court concluded that the use of a deadman roadblock constitutes a seizure when it results in the termination of the suspect's freedom of movement. In Donovan v. City of Milwaukee, 17 F.3d 944, 948-49 (7th Cir.1994), this court concluded that the intentional backing of a squad car into the path of a fleeing motorcycle, thereby terminating the motorcyclist's freedom of movement, constituted a seizure under the Fourth Amendment
 
 
 [4]
 Riggins' affidavit does not elaborate on the meaning of "got into it," but Officer Boggs' police report recounts that after calling Officer Seward several obscene names, Riggins "exited the vehicle and with his fists clinched [sic] walked at a very fast pace toward Officer Seward."
 
 
 [5]
 Thompson also submitted an affidavit of an alleged witness to the encounter Brad Bailey had with Officer Boggs. We discuss Bailey's claim in Section E of the opinion
 
 
 [6]
 We agree with the district court which held that Fed.R.Evid. 404 applies to the proffered evidence of Boggs' alleged use of excessive force on other occasions. The Federal Rules of Evidence expressly prohibit "Evidence of other crimes, wrongs, or acts ... to prove the character of a person in order to show action in conformity therewith." Fed.R.Evid. 404(b)
 
 
 [7]
 Havana, Illinois, Police Department Rule 16.01 provides as follows:
 PATROL--PURSUIT DRIVING: Automobile chases at high speeds are extremely dangerous to the chaser, the chased and the innocent public. They are to be avoided unless in the opinion of the officer the chased presents such a clear menace as to offset the danger of two (2) or more speeding automobiles. This judgment decision for the officer [is] similar in many respects to the problem of when to use a firearm. For this reason, high speed chases are discouraged, but not prohibited. They are sometimes necessary, but not often. It is highly unlikely that you will be asked why you did not chase a speeder. There is always tomorrow.
 (Emphasis in original).
 
 
 [8]
 The instruction read as follows:
 More than one person may be to blame for causing an injury. If you decide that the defendant['s] or defendants' conduct was a cause of the plaintiff's injury or damage, it is not a defense that some third person who is not a party to the suit may also have been to blame. However, if you find the sole proximate cause of injury to the plaintiff was a [sic] conduct of some person other than the defendant, or defendants, then your verdict shall be for defendants.
 
 
 [9]
 We note that although neither the magistrate judge nor the district court judge were required to make detailed findings of fact and conclusions of law as mandated under Fed.R.Civ.P. 52(a), a brief statement of the reasons for denying the motion would be beneficial to the litigants as well as facilitate meaningful appellate review. Nonetheless, the record is sufficient to establish that the court did not abuse its discretion in denying Bailey's joinder motion
 
 
 [10]
 We add that the plaintiff has failed to direct us to any case, nor have we been able to locate any case, in which a court granted a motion to join made by a non-party to the lawsuit. It would seem that the proper course of action would be a motion to intervene under Fed.R.Civ.P. 24. See Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 564 F.Supp. 1358, 1371 (D.Del.1983) (citing Parker-Hannifin v. Samuel Moore & Co., 436 F.Supp. 498, 500 (N.D.Ohio 1977))
 
 
 [11]
 We note that a recent Third Circuit decision, Fagan v. City of Vineland, 22 F.3d 1283 (3d Cir.1994), held that a city could be liable under Monell even though the individual officer was not liable. Fagan attempts to distinguish Heller on the grounds that in Heller, the plaintiff was only seeking to hold the City of Los Angeles liable under a theory of respondeat superior. That cannot be the case since Monell expressly holds that there is no cause of action for respondeat superior liability against a municipal corporation under 42 U.S.C. Sec. 1983. Monell, 436 U.S. at 694-95, 98 S.Ct. at 2037-38. Thus we choose to follow the clear holding of Heller that "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." Heller, 475 U.S. at 799, 106 S.Ct. at 1573