**James Lee BARNA, as Special Administrator of the Estate of James S. Barna, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 95 C 6552.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 28, 1998.

Roger Pascal, William Edward Meyer, Jr., Schiff, Hardin & Waite, Chicago, IL, for plaintiff.

Jonathan C. Haile, United States Attorney's Office, Chicago, IL, Steven J. Riegel, Senior Aviation Counsel, Department of Justice, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

This opinion discusses the issues raised by the motions in limine filed by the parties.

*Plaintiff*

## I. Motion to Bar Conclusions Contained in the NTSB Report.

The National Transportation Safety Board ("NTSB") undertook an investigation into Mr. Barna's plane crash and issued a NTSB Aircraft Accident Report. The Report appears to be in two parts; one part summarizes all of the factual information uncovered in the investigation and another part includes the NTSB's probable cause determination regarding the ultimate cause of the crash. 49 U.S.C. § 1154(b) provides that "[n]o part of a report of the [National Transportation Safety] Board, related to an accident or an investigation of an accident, may be admitted into evidence or used in a civil action for damages resulting from a matter mentioned in the report." The plaintiff moves to bar any party, witness, or attorney from attempting to introduce or refer to the conclusions contained in the NTSB report. The plaintiff suggests that experts may testify to·conclusions based on non-conclusory facts within the Report, but the Report should not be admitted.

In support of his argument, the plaintiff cites two cases from this district which strictly applied the language of Section 1154(b) to bar NTSB Reports in their entirety. *In re Air Crash Near Roselawn, Indiana*, No. 95 C 4593, 1997 WL 572896 (N.D.Ill. Sept. 10, 1997); *In Re Air Crash Disaster at Sioux City, Iowa*, 780 F.Supp. 1207 (N.D.Ill.1991). I agree with their conclusions.

## II. Motion to Bar Reference to Collateral Sources.

The plaintiff moves to exclude any reference to benefits received from collateral sources. The United States concedes plaintiff is correct in his statement of law. Any question of whether any benefit allegedly received (no specific ones are mentioned) is collateral will be decided at trial.

## III. Motion to Bar Reference to Mr. Barna abandoning the ATC Frequency.

The plaintiff expects the United States or its experts to testify that Mr. Barna turned down the volume of his radio or altogether abandoned the air traffic control ("ATC") frequency so that he could communicate with another pilot in the air, David Groth. The plaintiff expects the United States to argue that towards the end of his flight Mr. Barna was only in communication with Mr. Groth and was therefore unable to hear vector directions from air traffic controllers. The plaintiff argues that any such testimony is purely speculative and should be excluded under Rules 401 and 403. The plaintiff attaches the deposition transcript of the air traffic controllers in communication with Mr. Barna. Neither knows whether Mr. Barna left the ATC frequency. Additionally, the plaintiff attaches the transcript of the communications between Mr. Barna and the controllers to prove Mr. Barna did not leave the ATC frequency.

In opposition, the United States says the evidence will show that Mr. Barna left the ATC frequency to seek help from Mr. Groth. During the last 17 minutes of the flight, the government says Mr. Barna did not respond to the controllers' repeated attempts to contact him. The government represents that it will present evidence that another pilot and a controller at the Minneapolis Air Route Traffic Control Center notified the Chicago controllers that Mr. Barna was talking to Mr. Groth. Assuming this evidence is presented, I cannot say as a matter of law that the expected argument would be purely speculative. Without hearing the testimony, I decline at this time to make a determination of whether an expert could testify to the same conclusion. Plaintiff's motion is therefore denied.

## IV. Motion to Bar Reference to Premature Lowering of Landing Gear.

The plaintiff believes the United States will attempt to introduce testimony that Mr. Barna prematurely lowered his landing gear on his aircraft as a result of habit. Fed.R.Evid. 406. The plaintiff argues there is insufficient evidence to prove it was "semi-automatic" for Mr. Barna to lower the landing gear before landings and thus, habit has not been proven. *See generally Thompson v. Boggs*, 33 F.3d 847, 854–55 (7th Cir.1994).

The United States argues that Mr. Barna's lowering of the landing gear was a major factor in this crash. According to one of the United States' experts, it caused significant drag which resulted in Mr. Barna losing altitude before he could reach the runway. The United States argues, however, that this evidence has nothing to do with habit. It will offer physical and expert evidence that proves Mr. Barna's landing gear was lowered at the time of the crash. If so, there is no need to rely on habit to introduce evidence that the landing gear was lowered. The motion is denied.

## V. Motion to Bar Defendant's Experts.

■ The plaintiff moves to bar the United States' experts from testifying "on the grounds that they have been manifestly, improperly, and prejudicially influenced, biased, and controlled by counsel for the government such that, pursuant to Fed.R.Evid. 702 and 403, their testimony will no longer assist the trier of fact...." (Pl. Motion at 1). Specifically, the plaintiff wants to bar Anthony Mupo (cartography), Bernard Coogan (piloting), Joseph Beaudoin (air traffic control), John Pearsall (approach design), and L. Ray Hoxit (weather).

According to Mr. Mupo's deposition, his expert report was drafted by Timothy Connor, counsel for the United States. Ronald Bolton, who was at one time designated an expert by the United States, also wrote an expert report that is quite similar to Mr. Mupo's report. (Pl.Exs. A & C). Mr. Bolton stated that he and Mr. Connor collaborated on the report. The plaintiff argues this is evidence the report is the opinion of the United States' lawyers.

The plaintiff also notes a fax cover sheet sent by Stephen Riegel, counsel for the United States, to Mr. Beaudoin, Mr. Coogan, and Mr. Hoxit. (Pl.Ex.E). The cover sheet discusses plans for a meeting in Denver, Colorado between the experts and Mr. Riegel. Mr. Riegel states that "[i]f each expert would bring a draft of his Rule 26 report, we can take turns dissecting them." *Id.* The plaintiff argues that the deposition of Mr. Beaudoin shows that after the Denver meeting Dr. Hoxit changed his expert opinion of the weather at the time of the crash. Dr. Hoxit denies changing his opinion.

The plaintiff argues that Fed.R.Civ.P. 26(a)(2)(B) requires an expert who will testify at trial to provide a written report "prepared and signed by the witness." The plaintiff says that since Mr. Mupo did not "prepare" the report, his testimony must be barred. As for the United States' other witnesses, the plaintiff argues that their opinions have been so shaped by the United States that they will not assist the trier of fact and thus, should be stricken.

The United States responds with the declarations of Mr. Connor, Mr. Coogan, Mr. Hoxit, and Mr. Beaudoin. Mr. Connor states he had a number of conversations with Mr. Mupo, both in person and telephonically, on the subject of chart making. (Df. Response Tab A ¶ 9). At some point, Mr. Connor put together a rough draft of Mr. Mupo's statement. Based on Mr. Mupo's input, a final draft was made and signed by Mr. Mupo. Mr. Connor states that he is not an expert on chart making and that the report consists solely of Mr. Mupo's statements. (Df. Response Tab A ¶ 10). Mr. Connor says he only assisted Mr. Mupo and Mr. Bolton, neither of whom had ever written a Rule 26 report, in putting the information provided into an acceptable Rule 26 format.

Mr. Coogan's declaration states he was not improperly influenced or biased by counsel for the United States. The Denver meeting was, in part, to provide facts to a consulting firm so that demonstrative exhibits could be prepared for trial and to allow each expert to verbalize opinions before committing them to writing. In sum, Mr. Coogan states that his opinion was the result of his "independent investigation, technical training and experience, and unbiased analysis with no undue influence by anyone."

Dr. Hoxit declares he did not change his opinion after the Denver meeting and that Mr. Beaudoin's comments are consistent with his opinion. Dr. Hoxit states that nobody attempted to change his opinion and that he believes his opinions are correct and based on established and proven meteorological procedures and principles. (Df. Response

Tab C). Mr. Beaudoin declares his Rule 26 statement was written completely by him and that he has not been asked to change nor has he changed his Rule 26 statement. (Df. Response Tab D). There is no declaration from Mr. Mupo.

I will not strike the expert opinions in this bench trial. The evidence the plaintiff produced may be admissible to show bias and influence and I will decide at trial whether the opinions should be given credence and what weight to attach to them.

*Defendant*

### I. Motion to Limit Testimony of Plaintiff's Expert.

The United States moves to bar Ronald Ridenour, the plaintiff's expert, from providing any testimony, opinions, or statements concerning air traffic control, instrument approach design, instrument approach cartography, and meteorology. The United States argues that Mr. Ridenour lacks the necessary training, knowledge, and experience required by Fed.R.Evid. 702 to qualify as an expert in these areas. The United States cites to portions of Mr. Ridenour's deposition to show he has never worked or been trained as an air traffic controller, only looked at the controller's handbook in relation to this case, has never had a job or training in designing instrument approach procedures, has never worked or been trained as a cartographer or chart maker, and has no experience or training in meteorology other than what he received in pilot training.

The plaintiff argues that as a United Airlines captain with more than 10,000 hours of piloting, Mr. Ridenour is an expert in air traffic control, instrument approach charts, and meteorology. To maintain his current pilot rating, Mr. Ridenour must periodically show competence in weather, air traffic control procedures, and instrument approach procedures charts. The plaintiff states Mr. Ridenour also is a flight instructor who teaches other about aeronautical charts, air traffic control, and weather.

As noted earlier, motions in limine to strike party experts are of less importance in bench trials. I will be better able to assess

Mr. Ridenour's expertise at trial. The motion is therefore denied.